BATES v MERCIER

Docket No. 187270. Submitted May 13, 1997, at Marquette. Decided June 10, 1997, at 9:05 A.M.

Bonnie J. Bates sought worker's compensation benefits from Terry L. Mercier and others for alleged mental disability resulting from witnessing her son's accidental death at her workplace. A magistrate denied the claim as untimely under the two-year period of limitation of MCL 418.381(1); MSA 17.237(381)(1), rejecting the plaintiff's contention that her psychological aversion to filing a claim relating to an accident for which she felt guilty constituted a mental incapacity that serves to toll the period of limitation. The Worker's Compensation Appellate Commission affirmed. The plaintiff appealed by leave granted.

The Court of Appeals *held*:

Mental incapacity under § 381(1) does not include psychological aversion to filing a worker's compensation claim.

1. Incapacity is defined as lack of ability, qualification, or strength; incapability; lack of legal power to act. The plaintiff's strong aversion to compensation in connection with her son's death is more accurately described as an unwillingness to pursue a claim rather than an incapacity to pursue a claim.

2. Mental incapacity under § 381(1) requires that the sufferer be unable to comprehend the sufferer's legal rights. The plaintiff clearly understood her legal rights but was unwilling to pursue them.

3. The adoption of the plaintiff's position that a psychological aversion to filing a claim constitutes mental incapacity would not serve the primary purposes behind statutes of limitation of encouraging plaintiffs to pursue claims diligently and protecting defendants from having to defend against stale and fraudulent claims.

Affirmed.

WORKER'S COMPENSATION — CLAIMS — STATUTE OF LIMITATIONS — MENTAL INCAPACITY — PSYCHOLOGICAL AVERSION TO CLAIMS.

A claimant's psychological aversion to filing a worker's compensation claim is not mental incapacity that serves to toll the two-year period of limitation for filing worker's compensation claims (MCL 418.381[1]; MSA 17.237[381][1]).

*Green, Renner, Weisse, Rettig, Rademacher & Clark, P.C.* (by *James M. Rettig*), for the plaintiff.

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *Michael J. Gillman*), for the defendants.

Before: O'CONNELL, P.J., and SAWYER and MARKMAN, JJ.

PER CURIAM. Plaintiff appeals by leave granted an opinion and order of the Worker's Compensation Appellate Commission (WCAC) affirming a magistrate's decision to deny plaintiff's claim for benefits as untimely. We affirm.

This matter arises out of a tragic accident at plaintiff's brother's (defendant Terry Mercier's) sawmill, where plaintiff worked. On July 12, 1988, plaintiff brought her eleven-year-old son to work. While her son attempted to remove debris from underneath an "edger" saw, he raised his head and was struck by the saw blade. He died from the resulting injuries. Plaintiff witnessed all of this, blamed herself for her son's death, and understandably suffered great emotional difficulties from this tragedy. On February 12, 1991, plaintiff filed a worker's compensation claim, seeking to recover wage loss and medical expenses for an alleged mental disability resulting from the accident. She contended that she was unable to file her claim within the applicable two-year period of limitation because there was "just too much guilt." The magistrate noted plaintiff's testimony that she was unable to file a claim in 1988-1990 because of her guilt; her testimony that she was aware of civil litigation arising out of her son's death but "didn't think she deserved anything because she felt that she was responsible for his death"; and her psychologist's testimony that she

had a " 'selective' mental incapacity to benefit in any way from the death of her son." The magistrate concluded in pertinent part:

> Despite the obvious anguish and distress plaintiff felt, her testimony indicates that she was able to function at least on a part-time basis in a work place setting approximately two months after the July, 1988 death of her son. She was aware in 1988 that the death of her son was causing her grief and emotional difficulties and despite her testimony and that of psychologist Weiss, I find that she was not physically or mentally incapacitated from filing a workers' disability compensation claim within the meaning of MCLA 418.381. As much as I deeply sympathize with the pain and stress that this particular episode has caused plaintiff, I find that plaintiff's claim for compensation benefits is barred because of her failure to file her claim for compensation benefits within two years of the injury date and/or last day of work.

The WCAC affirmed, specifically stating that the magistrate's finding that plaintiff was not physically or mentally incapacitated from filing a worker's compensation claim within the meaning of MCL 418.381(1); MSA 17.237(381)(1) was supported by the requisite evidence.

This Court's review in worker's compensation cases is limited to questions of law. Findings of fact made or adopted by the WCAC are conclusive on appeal, absent fraud, if there is any competent evidence in the record to support them, but a decision of the WCAC is subject to reversal if the WCAC operated within the wrong legal framework or its decision was based on erroneous legal reasoning. *York v Wayne Co Sheriff's Dep't*, 219 Mich App 370; 556 NW2d 882 (1996); *Matney v Southfield Bowl*, 218 Mich App 475, 484; 554 NW2d 356 (1996).

Here, the issue on appeal is a legal question: whether plaintiff's psychological aversion to filing a claim constituted a "mental incapacity" that tolled the two-year period of limitation under MCL 418.381; MSA 17.237(381).[1] Section 381 states in pertinent part:

(1) A proceeding for compensation for an injury under this act shall not be maintained unless a claim for compensation for the injury, which claim may be either oral or in writing, has been made to the employer or a written claim has been made to the bureau on forms prescribed by the director, within 2 years after the occurrence of the injury. . . . In the event of physical or mental incapacity of the employee, the notice and claim shall be made within 2 years from the time the injured employee is not physically or mentally incapacitated from making the claim.

In *Turner v Auto Club Ins Ass'n,* 448 Mich 22, 27-28; 528 NW2d 681 (1995), the Court set forth basic rules for statutory construction.

The cardinal rule of statutory construction is to identify and to give effect to the intent of the Legislature. The first step in ascertaining such intent is to focus on the language in the statute itself. If the statutory language is certain and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written.

Where the meaning of statutory language is not clear, judicial construction becomes necessary. Courts are to accord statutory words their ordinary and generally accepted meaning. Moreover, when courts interpret a particular phrase in a statute, they must, whenever possible, construe the phrase in such a way that the interpretation

---

[1] We are aware that in *Wilkins v General Motors Corp,* 204 Mich App 693, 701; 517 NW2d 40 (1994), this Court found a psychological aversion to constitute a "disability" under the Worker's Disability Compensation Act. That a psychological aversion may, in some circumstances, constitute a "disability" does not address whether a psychological aversion to filing a claim can constitute a "mental incapacity" under § 381(1).

does not conflict with, or deny effect to, other portions of the statute. [Citations omitted.]

We first focus on the language of § 381(1). "Incapacity" is defined as "lack of ability, qualification, or strength; incapability; lack of legal power to act." *Random House Webster's College Dictionary* (1992). Here, plaintiff alleges that, after the accident at issue, she was mentally incapable of pursuing the present claim because there was "just too much guilt." She does not claim that she was unable to understand that her son's death was causing her emotional distress. Nor does she claim that she was unable to understand her legal rights. She testified that her husband pursued a civil action in connection with her son's death but that she refused to participate in the action. She further testified that, initially, she could not file the present claim because there was "just too much guilt"; however, even her psychologist testified that plaintiff was mentally capable of filing the present claim by late autumn 1990. This testimony demonstrates that plaintiff was aware of the possibility of worker's compensation recovery for this tragic accident and chose consciously to forgo it for a time because of her guilt. Plaintiff's strong aversion to compensation in connection with her son's death is more accurately described as an *unwillingness* to pursue the present claim rather than as an *incapacity* to pursue it. Accordingly, the plain meaning of the word "incapacity" indicates that plaintiff's psychological aversion to pursuing the present claim would not constitute a mental incapacity that would toll the statute of limitations under § 381(1).

We also find guidance regarding the meaning of "mental incapacity" in the Revised Judicature Act's

provisions for tolling statutes of limitation on the basis of mental disorders. MCL 600.5851; MSA 27A.5851 states in pertinent part:

(1) [I]f the person first entitled to make an entry or bring an action under this act is . . . insane at the time the claim accrues, the person or those claiming under the person shall have 1 year after the disability is removed . . . to make the entry or bring the action although the period of limitations has run. . . .

(2) The term insane as employed in this chapter means a condition of mental derangement such as to prevent the sufferer from comprehending rights he or she is otherwise bound to know and is not dependent on whether or not the person has been judicially declared to be insane.

Section 5851(2) differs from § 381(1) in that the former focuses on "mental derangement" while the latter focuses on "mental incapacity." "Derange" means "to throw into disorder; disarrange; to disturb the condition, action, or function of." *Random House Webster College Dictionary* (1992). Thus, "mental derangement" appears to be a broader term than "mental incapacity" in that it would include disturbances less than complete incapability. In order to toll the applicable period of limitation, § 5851(2) requires mental derangement sufficient to prevent the sufferer from "comprehending" the sufferer's rights. A fortiori, a statute, such as § 381(1), that requires "mental incapacity" to toll the period of limitation would also seem to require that the sufferer be unable to "comprehend" his legal rights. Here, plaintiff's allegations indicate that she clearly understood her legal rights but was unwilling to pursue them. While her reasons for failing to pursue a claim are understandable—and indeed speak well about plaintiff's character—this is

not the equivalent of indicating an "incapacity" on her part to pursue the claim.

The purposes of statutes of limitation also provide guidance in interpreting the tolling provisions of § 381(1). In *Lemmerman v Fealk*, 449 Mich 56, 65; 534 NW2d 695 (1995), the Court summarized the primary purposes behind statutes of limitation as: "1) to encourage plaintiffs to pursue claims diligently, and 2) to protect defendants from having to defend against stale and fraudulent claims." *Lemmerman* addressed whether the common-law discovery rule or § 5851 extended the limitation period for a tort action allegedly delayed because of "repressed memory." The *Lemmerman* Court held that neither provision of law was available to extend the limitation period in such cases. *Id.* at 76-77. In reaching this conclusion, the Court stated at 76:

> Adoption of the plaintiffs' position would leave a determination of the onset of a limitation period an open question within the subjective control of the plaintiff. Placing a plaintiff in this discretionary position to allege the onset of the disability of repressed memory and the termination of that condition within an applicable grace period would "vitiate the statute of limitations as a defense" and is a circumstance we have rejected in the past.

Here, adoption of plaintiff's position that a psychological aversion to filing a claim constitutes a mental incapacity would make the onset and termination of the tolling provision of § 381(1) a matter within the subjective control of a worker's compensation claimant. Psychological aversion to file a claim is not readily ascertainable from objective manifestations. A definition of mental incapacity for purposes of § 381(1) that includes psychological aversion to file a claim

would dilute considerably the two-year statute of limitations because a claimant could strategically allege the onset and termination of such a psychological aversion to avoid any statute-of-limitations defense.[2] Specifically, we note that worker's compensation claims commonly arise from unexpected events that will often involve some related emotional trauma. A determination that psychological responses to such trauma, short of an inability to comprehend one's legal rights, constitute a "mental incapacity" under § 381(1) would potentially open the door to tolling under § 381(1) in a large number of cases in which this is currently barred by a statute of limitations. Such a broad reading of the tolling provisions of § 381(1) would be inconsistent with its articulation of a clear two-year statute of limitations.

For these reasons, we conclude that, as a matter of law, "mental incapacity" under § 381(1) does not include psychological aversion to filing a claim. Accordingly, we affirm the WCAC's order finding that plaintiff was not mentally incapacitated from filing the present claim and therefore that her claim was barred by the statute of limitations. Our resolution of this issue makes it unnecessary for us to reach the other issues raised by plaintiff.

Affirmed.

---

[2] We hasten to add that we do not characterize the instant case in this manner.