*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PARIE WALLACE,

        Plaintiff-Appellee,

and

AFFILIATED DIAGNOSTIC OF OAKLAND and
ONE STEP REHAB LLC,

        Intervening Plaintiffs

v

SUBURBAN MOBILITY AUTHORITY FOR
REGIONAL TRANSPORTATION,

        Defendant-Appellant,

and

JANET SZCZOTKA,

        Defendant.

FOR PUBLICATION
June 22, 2023
9:00 a.m.

No. 360537
Wayne Circuit Court
LC No. 20-006759-NF

Before: MARKEY, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

In this case brought under the no-fault act, MCL 500.3101 *et seq*., defendant Suburban Mobility Authority for Regional Transport ("SMART") appeals by leave granted[1] the trial court's order denying in part SMART's motion for partial summary disposition under MCR 2.116(C)(7), (8), and (10). After suffering injuries from an automobile accident, plaintiff Parie Wallace

---

[1] *Wallace v SMART*, unpublished order of the Court of Appeals, entered on July 21, 2022 (Docket No. 360537).

received medical treatment from various medical providers and executed assignments of rights in exchange for the treatment. Plaintiff filed suit within one year of the accident, but the medical providers did not. During the lower court proceedings, the medical providers revoked the assignments in an apparent effort to save their claims from application of the "one-year-back rule," MCL 500.3145, by transferring those claims back to plaintiff. We are asked to decide, therefore, whether those revocations saved the claims. We conclude they do not and, therefore, reverse in part the trial court's order and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On October 2, 2019, plaintiff was a passenger on a bus owned and operated by SMART. The accident in question occurred when defendant Janet Szczotka, traveling westbound on Ford Road in Dearborn Heights, Michigan, allegedly turned right onto Vernon Street from the left lane, causing a collision with the bus, which was traveling in the right lane. As a result of the accident, plaintiff received treatment for injuries sustained in the accident and incurred bills from various medical providers, including, as relevant here, C-Spine Ortho, Sierra Surgical, Select Specialists, and Baz Eagle Transportation. In connection with the treatment these providers rendered, plaintiff executed assignments to each of them, all of which occurred before plaintiff filed suit. In each assignment, plaintiff transferred her right to collect insurance benefits related to the treatment she received from each provider.

On May 27, 2020, plaintiff filed a complaint seeking payment of personal injury protection ("PIP") benefits from SMART. Plaintiff alleged she incurred allowable expenses under the no-fault act as a result of the injuries she sustained in the accident; however, SMART failed to pay as required. Plaintiff's allowable expenses included bills from C-Spine Ortho, Sierra Surgical, Select Specialists, and Baz Eagle Transportation.

SMART moved for partial summary disposition of plaintiff's claims for PIP benefits under MCR 2.116(C)(7), MCR 2.116(C)(8), and MCR 2.116(C)(10). In its motion, SMART argued that plaintiff was not entitled to claim PIP benefits from the medical providers because she assigned her rights to pursue benefits claims for these services to the providers. Plaintiff opposed the motion, arguing she had the right to pursue claims for benefits against SMART, notwithstanding the assignments.

During the trial court's first hearing on SMART's motion, the trial court adjourned to allow supplemental briefing and to permit plaintiff to obtain revocations of the assignments. In January 2022, almost two years after the litigation started, plaintiff obtained revocations of the assignments from C-Spine Ortho, Sierra Surgical, Select Specialists, and Baz Eagle Transportation. In response, SMART filed a supplemental brief arguing the revocations of the assignments were improper because the claims assigned to the providers were barred under the one-year-back rule. In other words, none of the providers pursued an action within one year of the denials and, therefore, its liability for their claims already extinguished at the time plaintiff received the revocations of assignment.

The trial court denied in part SMART's motion for partial summary disposition on the basis of the revocations.[2] The trial court stated that the medical providers, as assignees, had the right to give back plaintiff's claims in order to pursue them and that SMART had notice that those claims were at issue. Thus, because there was consideration exchanged for the revocations and because granting plaintiff's motion would "leave[e] Plaintiff[] on the hook," the court denied SMART's motion as to the assigned claims. This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Sterling Heights Pain Mgt, PLC v Farm Bureau Gen Ins Co of Mich*, 335 Mich App 245, 249 n 1; 966 NW2d 456 (2020). The trial court granted in part and denied in part SMART's motion for summary disposition on the basis of assignments. Thus, we interpret the trial court's order as having considered the motion under MCR 2.116(C)(7), which states that summary disposition is appropriate when there is "assignment or other disposition of the claim before commencement of the action."

"When considering a motion brought under MCR 2.116(C)(7), it is proper for this Court to review all the material submitted in support of, and in opposition to, the plaintiff's claim." *Bronson Methodist Hosp v Allstate Ins Co*, 286 Mich App 219, 222; 779 NW2d 304 (2009). We "must accept as true a plaintiff's well-pleaded factual allegations, affidavits, or other documentary evidence and construe them in the plaintiff's favor." *Id*. at 222-223.

## III. ANALYSIS

Under MCL 500.3107, PIP benefits are payable for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). The no-fault act allows injured claimants to pursue recovery of PIP benefits themselves or they may assign their right to recovery to their medical providers. See *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 217 n 40; 895 NW2d 490 (2017). A valid assignment occurs when the assignor "manifest[s] an intent to transfer and must not retain any control or any power of revocation." *Burkhardt v Bailey*, 260 Mich App 636, 655; 680 NW2d 453 (2004) (quotation marks and citations omitted).

"When an assignment occurs, the assignee of a cause of action becomes *the real party in interest* with respect to that cause of action, inasmuch as the assignment vests in the assignee all rights previously held by the assignor." *Farrar v Suburban Mobility Auth for Regional Transp*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 358872 and 358884); slip op at 5 (quotation marks and citation omitted). "A real party in interest is the one who is vested with the right of action on a given claim, although the beneficial interest may be in another." *Id*. (quotation marks and citation omitted). "The real-party-in-interest doctrine recognizes that litigation should

---

[2] The court granted SMART's motion with respect to two providers that had brought their own separate actions to recover benefits paid in connection with treatment for plaintiff. This portion of the trial court's order is not at issue in this appeal.

be begun only by a party having an interest that will assure sincere and vigorous advocacy and protects a defendant from multiple lawsuits for the same cause of action." *Id*. at 6 (quotation marks and citation omitted); see also MCR 2.201(B) ("An action must be prosecuted in the name of the real party in interest").

On appeal, SMART argues that the trial court erred when it denied SMART's motion for partial summary disposition because plaintiff's claims for benefits as to services rendered by C-Spine Ortho, Sierra Surgical, Select Specials, and Baz Eagle Transportation were barred by the one-year-back rule. SMART notes that plaintiff assigned to Sierra Surgical, Select Specialists, Baz Eagle Transportation, and C-Spine Ortho the rights to collect PIP benefits from SMART for services rendered, which divested plaintiff the right to pursue those PIP benefits. Moreover, plaintiff did not retain the power to revoke the assignments at the time the assignments were executed. When the medical providers revoked the assignments, they no longer had a right to bring a cause of action against SMART because the claims were barred by the one-year-back rule. SMART argues, therefore, that plaintiff was also barred by the one-year-back rule from pursuing those claims.

Relying on *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 358170 & 358171), plaintiff contends that because the assignments were executed before plaintiff filed the lawsuit, and the revocations of the assignments were executed after the plaintiff filed the lawsuit, MCL 500.3112[3] provides plaintiff with a cause of action against SMART. Specifically, plaintiff contends that she is a real party in interest because "[t]he original assignments do not extinguish the provider's right to recover payment from plaintiff for bills which the provider does not receive reimbursement from the no-fault carrier." Plaintiff also argues that the one-year-back rule does not bar the previously assigned claims because plaintiff's complaint was filed on May 27, 2020, eight months after the accident. Plaintiff also contends her claims for PIP benefits were tolled under MCL 500.3145 because SMART sent denials to the medical providers, not to plaintiff.

Recently, in *Robinson v Szczotka*, unpublished per curiam opinion of the Court of Appeals, issued April 6, 2023 (Docket No. 359646),[4] we addressed a factual scenario similar to that which occurred in this case.[5] There, the plaintiff was injured in an automobile accident and thereafter

---

[3] MCL 500.3112 states, in relevant part:

> Personal protection insurance benefits are payable to or for the benefit of an injured person or, in case of his or her death, to or for the benefit of his or her dependents. A health care provider listed in section 3157 may make a claim and assert a direct cause of action against an insurer, or under the assigned claims plan under sections 3171 to 3175, to recover overdue benefits payable for charges for products, services, or accommodations provided to an injured person.

[4] Although unpublished and, therefore, not binding, we may nevertheless consider *Robinson* for its persuasive value. See *Eddington v Torrez*, 311 Mich App 198, 203; 874 NW2d 394 (2015).

[5] Indeed, it appears that the litigation in *Robinson* arose out of the same accident involving Szczotka's collision with the SMART bus.

assigned her claims to her medical providers. *Robinson*, unpub op at 2. Like this case, after the plaintiff filed her complaint, "she and a number of her medical providers executed 'Mutual Revocation[s] of Assignment(s).' " *Id*. In other words, to avoid application of the one-year-back rule, the plaintiff sought to "revoke her assignments retroactively and litigate her own timely filed claims." *Id*.

This Court reversed the trial court's order denying the defendant's motion for summary disposition, reasoning that once the plaintiff assigned her interests to the medical providers, they became the real parties in interest to the action. *Id*. at 6 ("[T]he medical providers as assignees held the right to seek to recover the unpaid medical bills, and plaintiff no longer had a cause of action to pursue, having transferred it away."). The plaintiff's creative solution—obtaining revocations from the medical providers—did not otherwise save her claims because "one must be the real party in interest at the time the lawsuit is filed, and a retroactive, or *nunc pro tunc*, revocation may not be used to correct a factual problem that existed when the lawsuit was filed." *Id*. at 7. We explained:

> While plaintiff and her medical providers were at liberty to mutually decide to revoke the assignments, the revocations were effective as of the date that the revocations were executed and could not essentially eliminate the fact that the assignments had occurred prior to plaintiff filing suit. And, the medical providers had no timely claims to return to plaintiff as of the date of the revocations because the revocations occurred more than a year after services were rendered. Thus, the mutual revocations did not reassign any timely claims to plaintiff. [*Id*.]

In this case, the majority of benefits at issue were assigned to the medical providers before plaintiff filed her complaint. Plaintiff executed assignments to C-Spine Ortho, Sierra Surgical, Select Specialists, and Baz Eagle Transportation between October 2019 and January 2020. Thus, upon execution of these assignments, these providers became the real parties in interest to the claims for benefits, and only the providers could bring an action to recover said benefits. See *Farrar*, ___ Mich App at ___; slip op at 5. After executing the assignments and during the litigation, plaintiff obtained revocations for the assignments from C-Spine Ortho, Sierra Surgical, Select Specialists, and Baz Eagle Transportation in January 2022, after she filed her complaint.

While the revocations of the assignments reassigned the providers' claims for benefits back to plaintiff, the revocations occurred more than a year after SMART denied the medical providers' claims for benefits. Plaintiff and the providers executed the revocations in January 2022, and these revocations transferred the providers' interests to the claims for benefits back to plaintiff. However, by the time plaintiff obtained these revocations, the providers no longer had valid claims for benefits by operation of the one-year-back rule. See *Robinson*, unpub op at 7. SMART denied Sierra Surgical's claims on January 24, 2020, Select Specialists' claims on February 11, 2020, Baz Eagle Transportation's claims on February 28, 2020, and C-Spine Ortho's claims on April 8, 2020. As such, the providers needed to bring an action against SMART within one year of its formal denial, which they failed to do.

Plaintiff's reliance on *C-Spine Orthopedics* is misplaced. In that case, the injured claimants' claims were assigned to the plaintiff, C-Spine, in exchange for treatment resulting from an automobile accident. *C-Spine Orthopedics*, ___ Mich App at ___; slip op at 2. C-Spine, in

turn, assigned many of its accounts, including the claimants' at issue, to factoring companies that "provide financing to businesses with cash flow issues by purchasing outstanding invoices at a discounted rate." *Id*. After the litigation was started by C-Spine, the factoring companies entered into counter-assignment agreements transferring back to C-Spine the rights they acquired. *Id*. This Court reversed the trial court's order granting summary disposition in favor of the defendant, concluding that C-Spine, as the real party in interest, had standing to bring the initial suit, and the counter-assignments permitted C-Spine to continue to pursue the action. *Id*. at 3-4.

In contrast with *C-Spine Orthopedics*, however, when the transfer of the beneficial interest from the medical providers to plaintiff occurred in this case, the medical providers did not transfer an interest in a claim to which liability attached. When the medical providers revoked their assignments for the benefit of plaintiff to pursue her claims after the litigation began, the medical providers could no longer recover their claims by operation of the one-year-back rule. See MCL 500.3145. This issue was not present in *C-Spine Orthopedics*.

Plaintiff attempts to sidestep this issue further by contending that MCL 500.3145(3) tolls her claims for benefits because she never received a formal denial from SMART and she filed her complaint in May 2020. Under that statutory section, "[a] period of limitations applicable . . . to the commencement of an action and the recovery of benefits is tolled from the date of a specific claim for payment of the benefits until the date the insurer formally denies the claim." MCL 500.3145(3). Plaintiff's argument is ultimately unconvincing, however, because at the time SMART denied the claims, the medical providers were the real parties in interest regarding plaintiff's claims for benefits under the executed assignments.

By January 2022, when plaintiff obtained the revocations, each provider's right to collect on these claims for benefits had already been extinguished by the one-year-back rule. Thus, there remained no actionable causes of action to give back to plaintiff. Therefore, the trial court erred in denying in part SMART's motion for summary disposition of plaintiff's claims as it relates to the benefits plaintiff assigned to C-Spine Ortho, Sierra Surgical, Select Specialists, and Baz Eagle Transportation before she filed her complaint.

Reversed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. SMART, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly